## Goode *v.* C. C. Mayson's Administrators.

There were three judgments; the youngest judgment creditor levied first, and showed
property; the next oldest was levied on the same property, and the sheriff proceeded
to sell under both; the execution from the oldest judgment not having been issued
or levied.  The sheriff applied the money to the second oldest judgment, and the
court below, on motion, ordered it to be applied to the youngest.  This the assignee
of the oldest judgment resisted, and claimed the money, and sued out a writ of error.
The plaintiffs in execution to the second oldest judgment not being parties to the
record, the judgment of the court below was affirmed.

IN ERROR from the circuit court of the county of Hinds.

On the 6th of June, 1839, judgment was rendered in Hinds
circuit court in favor of Hiram B. Sutton, against John H. Mallo-
ry and Hall, for $2,857, execution on which to the succeeding
term was returned "*nulla bona*," and was not renewed until the
9th January, 1841; no further steps having been taken for a period
of fourteen months.

On the 26th of September, 1840, judgment was rendered in
same court in favor of Lyons & Gilmore, against John H. Mallo-
ry, for $381 17, execution on which was issued on the 5th of
November, 1840, and placed in the sheriff's hands on the 20th of
same month.

On the 17th of October, 1840, judgment was rendered in same
court in favor of C. C. Mayson's administrators, against John H.
Mallory, for $1,294 23, execution on which was issued on the
4th of January, 1841, and was placed in the same sheriff's hands
on the 6th of same month.

On the 7th of January, 1841, (two days before the execution in
favor of H. B. Sutton was issued) the sheriff of Hinds county lev-
ied the execution in favor of Lyons & Gilmore, and also that in
favor of C. C. Mayson's administrators, on certain slaves of Mal-

lory, which, on the 2d of February, 1841, were sold for $800. Of this sum $337 73 was applied by the sheriff to the satisfaction of an execution in favor of R. L. Mayson, from Copiah county, which had confessedly precedence of the others; and the balance, being $462 26, was appropriated by him, *first* to the payment of the execution in favor of Lyons & Gilmore, amounting, principal, interest, and cost, to $419 and what remained was applied to the *fieri facias* in favor of C. C. Mayson's administrators.

At the June term, 1841, the appropriation made of the funds by the sheriff was set aside by the court, on motion of C. C. Mayson's administrators, and, at their instance, the balance of $462 26 remaining after satisfying the *fieri facias* from Copiah county, was appropriated by the court to *their* execution, to the exclusion both of Lyons & Gilmore and of H. B. Sutton, who excepted thereto. This appropriation was made by the court upon the ground, that the property levied on, and out of which the money was made, was pointed out to the sheriff by C. C. Mayson's administrators.

The case is now brought before this court by a writ of error sued out by R. N. Goode, as assignee of Hiram B. Sutton, and who considers himself aggrieved by the order of the court, excluding the execution upon that judgment from any participation in the proceeds of the sale of Mallory's property, made on the 2d of February, 1841.

Holt, for Lyons & Gilmore.

There are two sufficient reasons why this writ of error should not be sustained:

1st. Because it is sued out and prosecuted, and bond given by R. N. Goode, who was no party to the proceedings in the court below, and is not, therefore, in legal estimation, aggrieved by the judgment rendered. It is true it is recited in the bill of exceptions, that "said Goode, *claiming* the benefit of the judgment in favor of Sutton, afterwards procured the execution in that case to be issued," &c. and further than this there is no mention made of him, in connection with the controversy in the circuit court. He did not appear to, or resist the motion made by Mayson's administrators for an appropriation of the money, nor did he except to

the judgment of the court now complained of. All this was done, as the bill of exceptions distinctly recites, by Hiram B· Sutton, by his attorney. Goode did not show to the court below, nor has he shown to this court, that he has the slightest interest, by assignment or otherwise, in the judgment in favor of Sutton. He appears as an *utter stranger*, who has obtruded himself into the cause, and as such, upon familiar principles, is not entitled to prosecute this writ in his own name. It should have been sued out, and bond executed by Hiram B. Sutton.

2d. Because the judgment of the circuit court, though *wrong as to Lyons and Gilmore*, was right as to Hiram B. Sutton, and those claiming under him. The judgment of the latter, though older in date than those of Lyons and Gilmore, and Mayson's administrators, had been permitted to sleep for fourteen months. The execution on it was never levied on the property out of which the money was made; and it was not issued or placed in the sheriff's hands until 9th January, 1841, *two days after* the junior executions of Lyons and Gilmore, and Mayson's administrators had been levied, and the property thereby charged. It was not therefore instrumental in producing the money, and can, of course, lay no claim to any share of it. This being the case, the holder of the judgment in favor of Sutton, whoever he may be, is not aggrieved by the order of the circuit court, appropriating the money to the junior executions, under which it had been made. Burney *v*. Boyd, 1 Howard, 39, 40; Smith and Picket *v*. Ship ditto, 234; Ashly *v*. Wilkes, and Commercial Bank *v*. Coroner of Yazoo county, decided at January term, 1842, of this court. The case last cited is a much stronger one in favor of the holder of the older judgment than that at bar; yet it was held that he was not entitled to the money, although his execution was in the coroner's hands *at the time* he levied the junior executions; whereas Sutton's execution did not issue or come to the sheriff's hands until *after* he had levied under the fieri facias in favor of Lyons and Gilmore, and Mayson's administrators.

In appropriating the money to the judgment in favor of Mayson's administrators, to the exclusion of that in favor of Lyons and Gilmore, the court committed a *manifest error;* for the judgment in favor of the latter is *nineteen days older* than that in favor of

the former. Execution was issued on it *two months*, and came into the sheriff's hands *one month and a half before* the execution in favor of Lyons and Gilmore, and it was levied on the property at *the same time* with that in favor of Mayson's adminis· trators, and the sale was made under both executions. Whether, therefore, we look to the age of the judgment in favor of Lyons and Gilmore, or to their superior vigilance, we must alike conclude that it is entitled to prior satisfaction. The fact that Mayson's administrators pointed out the property to the sheriff, can make no difference. The statute gives the precedence to the oldest judgment, not to plaintiff who may chance to be fleeter of foot in running down, or keener of scent in snuffing out property than his competitors. If the principle contended for on behalf of Mayson's administrators, and recognized by the court below, were established, the priority or precedence of judgments would depend not on their dates, but on the result of a race or scramble among the plaintiffs, as to who should first point his finger at the property of the defendant. If the slaves had not been shown to the sheriff by Mayson's administrators, they would in all probability have been shown to him by Lyons and Gilmore. At all events, the lien of the judgment of the latter cannot be affected by the accidental circumstance of the sheriff's not knowing of the existence or whereabouts of the property to which that lien attached.

Mayson's administrators attempted, when placing their executions in the sheriff's hands, to make a contract with him, that the proceeds of the sale should enure to their benefit. Had the officer entered into such a compact, it would have been in violation of law, and could not have affected the rights of Lyons and Gilmore. He, however, did not accede to the proposal made to him, but performed his duty by appropriating the money first to the satisfaction of Lyons and Gilmore's fieri facias, as is shown by his return.

Whether this question between Lyons and Gilmore, and Mayson's administrators, can be determined under a writ of error sued out by Goode, to which they are joint defendants, may be well questioned. If it can be so decided, we should be gratified. Lest, however, the court should refuse to entertain the question in this shape, Lyons and Gilmore have sued out a writ of error to the

judgment which is now pending in this court, and which, with the assent of the parties, we should be glad to have submitted with this case. Should that course not be concurred in, the affirmance of the judgment which may be entered in this case should be so limited as not to prejudice the rights of Lyons and Gilmore. It should not be a *general affirmance,* but an affirmance of the judgment only so far as it excluded Sutton's execution from any share in the money appropriated.

D. Shelton, for defendant in error.

*Per Curiam.*

A motion was made in the circuit court to appropriate money levied under two executions, one in favor of defendants in error, and the other in favor of Lyons and Gilmore, both against the goods and chattels of John H. Mallory. H. B. Sutton had obtained an older judgment against Mallory, and had assigned it to Goode, the plaintiff in error. The judgment of Lyons and Gilmore was the next oldest, and that of the defendants in error the youngest; but the defendants in error showed the property and had their execution levied. The execution of Lyons and Gilmore was also levied on the same property at the same time, and the sheriff proceeded to sell under both, and he applied the money to the satisfaction of Lyons and Gilmore; but the court on motion ordered it to be applied to the execution of the defendants. This Goode, the assignee of Sutton, opposed, on the ground that his judgment was the oldest, and that he was therefore entitled to the money, although his execution had never been levied. The case comes up on his bill of exceptions. Goode and C. C. Mayson's administrators being the only parties to this writ of error. As between the parties to the record, the judgment must be affirmed on the authorities cited; and Goode, if he has any lien, must be left to his recourse against the property. But as Lyons and Gilmore are no parties to this record, we cannot give judgment either for or against them, but must leave them to reverse or acquiesce in the judgment below, as they may think proper.

Judgment affirmed.